The Chancellor.
The defendants in error were two of the four heirs at law of the late Gen. Philip Yan Cortland, and claimed the premises in controversy in this suit, or rather the undivided half thereof, as a part of the real estate of the testator not disposed of by his will and codicil. The plaintiff in error was the tenant of P. G. Yan Wyck, the residuary devisee of the testator, who claimed the whole of the premises under the residuary clause of the will. At the date of the original will, in 1824, the testator and his brother and three sisters owned the premises, as tenants in common, in equal proportions. But subsequently, and before the making of the codicil in January, 1831, he purchased and took a conveyance from his brother and sisters of their four fifths of the premises; and afterwards died seized of the whole of the lot in fee. By the original will he devised the whole of his interest in this lot to his brother and sisters, in lieu and satisfaction of certain claims they had or might have upon him in respect to his receipts from their common property. By the codicil he recited this clause in his will, and stated that he had subsequently purchased most of the land; and that as he was chargeable with all the debts due from him to the estate of his father, this clause was useless; and he, therefore directed such clause to be revoked and made void to all intents and purposes.
The judgment of the court below, in favor .of the plaintiffs in that court, for one half of one fifth of the lot, is based upon the supposition that the revocation or annulling of this clause of the will, by the codicil, operated as a republication of the will, so as to give to the residuary devisee the four fifths of the lot which the testator had subsequently purchased; but that the striking of this clause out of the will} by the direction contained in the codicil to that effect, did not give to such residuary devisee the. o<her fifth which the testator owned when the original will was enecutod.
I think it is evident that this decision cannot be right. For the intention of the testator must govern, so far as it can be ascertained from the will and codicil taken together. And I cannot believe it possible that he revoked this clause for the *349 mere purpose of giving tó the residuary devisee the four fifths of the property which he had subsequently purchased ; and to charge him, or the residuary estate in his hands, with the debt which the original devise to his brother and sisters, of all his then interest in the lot, was intended to extinguish. Nor do I believe he did it with the intention of leaving the lot undisposed of by his will, so that it would go to the same persons, as his heirs at law, who would have taken four fifths thereof as heirs, and the other fifth as devisees, if this codicil had not been made. But he unquestionably intended to strike the whole clause out of the will; so that his original one fifth of the lot, together with the residue thereof which he had subsequently purchased, should go to his nephew, as his residuary devisee, subject to the payment of the debt which the original devise was intended to extinguish. Such is the legal effect of this codicil when taken in connection with the residuary clause of the will. For by such residuary clause he gives and bequeaths to his nephew, P. G. Tan Wyck, in fee, all the residue of his estate, both real and personal, excepting such parts thereof as he should thereafter bequeath by codicil; with full power to sell and convey real estate, foreclose mortgages &c., and pay all debts due to the people of the state, and all other demands against the testator, except such as were already provided for by the will. By striking out the clause in question, as directed by the codicil, the lot in controversy was neither specifically devised nor attempted to be specifically devised by the will; but it formed a part of the general residue upon which this residuary clause would operate. And the debt, for the satisfaction of which the original devise of the fifth of the lot to the brother and sisters of the testator was made, was no longer provided for in the will.
It is perfectly well settled that a republication of a will, by a codicil annexed to the will, or endorsed thereon, or referring to the will in such a way that there cannot be any doubt as to the identity of the instrument to which the codicil relates, as in this case, makes the will speak from the date of the codicil; so as to carry to the residuary devisee lands acquired by the testator between the date of the will and of the codicil; under the resid *350 nary devise contained in the original will. This was decided by Lord Macclesfield one hundred and twenty years since, in the case of Acherley v. Vernon, where the codicil referred to the original will by its date, as in this case. And his decision was confirmed upon appeal to the house of lords, in 1725. (Comyn’s Rep. 381; 3 Bro. P. C. 85, Toml. ed.) This was followed by Lord Hardwicke, twenty-five years afterwards, in the case of Gibson v. Rogers, (Amb. Rep. 93.) And he expressed the opinion that every such codicil, properly attested, was a republication of the will; although it became unnecessary, from a subsequent discovery of facts, to make a final decree upon the question in that case. Such was the settled law of England, therefore, at the time of our separation from the mother country. For in the case of The Attorney General v. Lady Downing, in 1767, (Amb. Rep. 571,) Lord Camden distinctly asserts the same principle, and repudiates the decision said to have been made in Hutton v. Simpson, (2 Vern. Rep. 722,) that a codicil relating to personal estate, annexed to the will at the time of its execution, and duly attested, was not a republication of the will, so as to operate upon a devise of real estate contained in the original will. And his decision in the case then under consideration was put upon the sole ground that the codicil was not annexed to the will, and did not refer to it by its date or provisions, as the codicil did in the case of Acherley v. Vernon, and in the case now before us. The cases in England since the revolution show that the law remains unaltered there; and that a codicil duly attested, annexed to or referring to the will, though such codicil relates to personal estate only, and expresses no intention as to republication, is in fact a republication of the will, so as to carry after-acquired lands, as well as those which belonged to the testator at the date of the will, to the residuary devisee, Under a general residuary clause contained in such original will. (Pigott v. Waller, 7 Ves. Rep. 98; Barnes v. Crow, 4 Bro. C. C. 2; Goodtitle v. Meredith, 2 Maule & Sel. Rep. 5; Powys v. Mansfield, 3 Mylne & Craig’s Rep. 359; Yarnold v. Wallis, 4 Young & Col. Rep. 160.) In the case last cited, Lord Chief Baron Abinger, after stating the general *351 rule that a codicil duly executed was a republication of the will, so as to affect all the lands the testator had at the time of making the codicil, as if the will bore date at that time, places the cases of Bowes v. Bowes, (2 Bos. & Pul. Rep. 500,) and of Monypenny v. Bristow, (2 Russ. & My. Rep. 117,) which are exceptions to the general rule, upon the true ground. He says the language of the wills and codicils taken together in those cases were such as to show that the testator did not intend to devise the property in controversy by either. Or, to use his own language, “ those exceptions are founded on this—that if the testator had actually, at the very time he made his codicil, repeated his will and made it a part of the codicil, there must be new words in the one or the other to pass the newly purchased estate.” So in a recent case in Ireland, the testator made his will before the statute changing the value of the currency of Ireland to that of England and declaring that all matters relating to money thereafter made, done, executed &c., should be according to the sterling value; and he republished the will afterwards, by executing a codicil merely appointing new executors, but duly attested, endorsed upon the original will. Lord Chancellor Plunkett decided that the legacies and an annuity, given in the original will, of a certain number of pounds per annum, were payable in the currency as it existed at the time of the republication of the will by the codicil. That the effect of the codicil was to make the whole will as if published at the date of the codicil and subsequent to the statute changing the value of the currency. (Hamilton v. Carroll, 1 Irish Eq. Rep. 175.)
There is nothing in the decision of this court in the case of Van Kleeck v. The Dutch Church of New- York, (20 Wend. Rep. 457,) to prevent the general rule, that a republication by a codicil makes the will speak as of the date of such codicil, from being applied to this case. There, a devise of a particular lot to a corporation, which could not take real estate by devise, was held to except such lot from the general residuary clause of the will giving all the rest of the testator’s real estate to particular individuals who were not his heirs at law. And the principle of *352 that decision might have been applied to this case, if the codicil had not stricken the clause devising the premises in question to the brother and sisters out of the will, and they had all died before the testator; unless the provisions of the revised statutes have altered the rule of law in this respect. But in this case the codicil shows that the testator intended to alter and amend his will by striking this clause entirely out of the same. The premises in controversy, at the date of the codicil, were not excepted out of the residuary devise; but were left for the operation of the residuary clause, in the same manner as if the original will had actually been executed at that time, leaving out the clause thereof which the testator by his codicil directed to be revoked and made void.
For these reasons I think the defendant in the supreme court was entitled to a general judgment in his favor upon the special verdict, and that the judgment of the supreme court should be reversed.
Porter, Senator.
Philip G. Van Wyck claims the whole of the eighty acre tract under the residuary clause of the will of Philip Van Cortland. In respect to four fifths thereof, he places his claim on the ground that the testator purchased that portion of the tract after the execution of the will, and before he made his codicil; and that the codicil made no disposition of the four fifths. He claims the other fifth by reason of the revocation of that clause in the will giving it to his brother and sisters.
The supreme court decided that the codicil operated as a republication of the will at the date of the codicil, and consequently gave Van Wyck the four fifths under the residuary clause; but that as to the one fifth the testator died intestate, and that the plaintiffs below were entitled to recover the one half of one fifth as heirs at law of Philip Van Cortland. The question presented for our decision, therefore, is this, does the revocation, by a codicil, of a specific devise in a will, authorize the residuary devisee to claim title to the land which has been thus specifically devised? If it will, then the title to the whole of *353 the eighty acres vested in Philip G. Van Wyck on the death of the testator, and the judgment of the supreme court should be reversed so far as it respects the half of one fifth of the premises in question. If not, however, then the judgment should be affirmed.
All the authorities upon the subject seem to agree that in case of a devise which has lapsed by reason of the death of the devisee, in the lifetime of the devisor, the estate thus devised falls to the heirs at law. That rule rests upon the ground that the testator designed the estate in question for the particular object of his bounty, and made no disposition of it beyond that; and as it is necessary that he should effectually dispose of the estate if he would prevent it from descending to the heirs at law, and as in such case he has not provided in what manner the estate shall be disposed of should the devisee be incapable of taking by reason of his death, the presumption is irresistible that he did not mean to take it away from his heirs at law. For if such had been his intention he would have provided in bis will for the contingency.
In the case of a void devise—void for the reason that the devisee is incapable of taking—the rule has been definitively and it is to be hoped finally settled in this court by the case of Van Veeck v. The Dutch Church of New York, (20 Wend. 457.) There had been conflicting opinions upon the question previous to that case, as well in this country as in England; and the point of difference Seems to have been, whether the void devise should be treated as entirely obliterated from the will, and the will read as though the clause had never been inserted ; or whether, for the purpose of determining the intention of the testator with respect to the effect to be given to the residuary clause, the void devise should be taken into the account in determining what the testator designed should be embraced in the residuary clause.
It must now be treated as settled law that in cases of lapsed and void devises, the residuary clause in a will does not embrace the property which the testator had designed to give to persons other than the residuary devisee. And unless this casé can be distinguished from those just mentioned, the judgment of the *354 supreme court must be affirmed. The opinion of that court, which was delivered by Mr. Justice Cowen, is based upon the law as declared in the case of Van Kleeck v. The Dutch Church of New-York, supra. He says: “That case holds that, if a'man attempt to devise certain of his lands, the residue to another, though the first devise be utterly void as such, yet the mere attempt and mention of the land with that view take it out of the residuary clause.” He further says: “If I am not mistaken in the principle of that case, the plaintiffs are entitled to recover the one half of one fifth of the tract of eighty acres;” thereby determining that the case of a revocation of a devise is to be governed by the same principle as that of a lapsed and void devise, in respect to the rights of the residuary devisee.
Is there not an important distinction between a devise revoked, and a void or lapsed devise ? In the latter case the intention of the testator is plain, as between the person to whom a specific devise is made, and the residuary devisee, that the latter shall not take the property thus devised; and this intention continues until his death. By the will the testator has declared that the property should not go to the residuary devisee, and there he leaves it. It may well be said, where the devise is declared void in law, or has become lapsed, and the intention of the testator is in that respect defeated, that he has died intestate in respect to the property thus attempted to be devised. In such cases the residuary clause will pass nothing which the antecedent clause purported to grant to others. But a revoca-^ tion of a devise is the act of the testator, by which he himself declares the devise void; and is the same as saying that his will must be read and construed as though that clause had not been inserted.
In qll the cases that I have examined upon the construction' to be given to the residuary clause, where that clause has been adjudged ineffectual, and the question has been between the heir and devisee, the object of the testator, as indicated by the provisions of the will, has been to give the property in question to others than the residuary devisee. And this object seems to form the criterion by which the courts have decided that, as to *355 void and lapsed devises, the heir shall take the estate in preference to the residuary devisee; and they retain the void clause .for the sole purpose of more readily and certainly arriving at the intention of the testator. But has this doctrine any application to a case of revocation ? If the devise showed in the first instance an intention on the part of the testator that the subject of the devise should not pass to the residuary devisee, is not that intention entirely nullified by the revocation of the clause?
The will and codicil in the present case must be taken to speak as of the date of the codicil. This follows necessarily from the principle laid down by the supreme court, and not disputed, viz. that a codicil duly attested to pass real estate, operates per se as a republication of the will. Philip G. Van Wyck, the .residuary devisee, takes under the will what the testator intended he should take at the time the codicil was executed. (Jones v. Mitchell, 1 Sim. & Stu. 290.) The testator had in his will devised the one fifth in question to his brother and sisters, two of whom were the plaintiffs below. But at the time of the republication of his will, he revoked that devise, and thus by his own act deprived them of the power of taking under it. Hence we see that the reason given in the cases of lapsed and void devises, for excepting the property embraced therein from the residuary clause, viz, that the testator intended to give the property to others, altogether fails in cases of revocation: and when the reason of the rule fails, it is safe to say that the rule itself is inapplicable. At the date of this codicil, the testator, by the clause of revocation, in effect declared that he had no intention to give this one fifth to any other than the residuary devisee.
In my opinion this will and codicil are to be read as though the testator had re-written his will, embodying the substance of both in it, with the exception of the clause devising the one fifth to his brother and sisters. If that had been done, there would be no ground left to question the right of the residuary devisee. If we read the will and codicil as they now stand, and consider them as having been made at the date of the latter, the intention *356 of the testator as expressed therein will appear to be this. In the first part of the will he devises the one fifth of the eighty acres to his brother and sisters; and then, after making various other provisions, hé virtually says: “ In respect to this one fifth I have altered my mind, and I hereby direct the said clause to be revoked and made void to all intents and purposesadding the residuary clause. Whether therefore we include the revoking clause or not, the meaning is the same, and shows that the intention of the testator was to give the one fifth to the residuary devisee.
There is another strong fact - evincing the intention of the testator. The devise was to his brother and three sisters, his only heirs ; and unless he designed that Van Wyck should hold this one fifth, why revoke the clause that gave it to them ? By the construction which the supreme court have put upon the will and codicil, the persons mentioned would take the property in any event, and thus the testator is made to do an act entirely nugatory.
I am of the opinion that the one-fifth was embraced in the residuary clause, and that the judgment of the supreme court should be reversed.
Senator Bockee also delivered an opinion in favor of reversing the judgment of the supreme court.
On the question being put, “ Shall this judgment be reversed?” all the members of the court present who heard the argument, eighteen in number, voted in favor of reversing.
Judgment reversed.